IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 24-cv-02329-PAB-TPO

DEREK STRINE,

 Plaintiff,

v.

THE UNITED STATES CENTER FOR SAFE SPORT,

 Defendant.

---

**ORDER**

---

This matter comes before the Court on Defendant United States Center for SafeSport's Amended Motion to Dismiss or, in the Alternative, to Compel Arbitration [Docket No. 31]. Plaintiff Derek Strine filed a response, Docket No. 36, and defendant the United States Center for Safe Sport ("the Center") filed a reply. Docket No. 37.

**I. FACTUAL BACKGROUND[1]**

Mr. Strine operates a business, Barnstable South, that trains horses to compete in the "equine discipline of eventing," a sport in which a rider and her horse compete in cross country jumping, dressage, and show jumping. Docket No. 1 at 4, ¶ 8 & n.2. The Center is a not-for-profit corporation that "claims exclusive jurisdiction to review allegations of sexual abuse and misconduct within U.S. Olympic or Paralympic

---

[1] The facts below are taken from plaintiff's complaint, Docket No. 1, and are presumed to be true, unless otherwise noted, for purposes of ruling on defendant's motion to dismiss. *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).

organizations and within what it self-defines [as] the 'Olympic Movement.'" *Id.* at 2, ¶ 3. Under its jurisdiction, the Center exercises the ability to review allegations of sexual abuse within the United States Olympic and Paralympic Committee ("USOPC") and the sport-specific national governing bodies ("NGBs") (collectively the "Olympic Movement"). *Id.* at 2-3, ¶ 3.

While operating Barnstable South, Mr. Strine met a woman, referenced as E.D. *Id.* at 5, ¶ 9. Mr. Strine and E.D. had no "business or personal relationship arising out of sport," and E.D. was never an "employee, subordinate, contractor, or student to or of Mr. Strine at his facility or with regard to sport." *Id.*, ¶ 11. In November 2019, Mr. Strine and E.D. went to dinner together and later engaged in "consensual intimate relations." *Id.*, ¶ 10.

On or about September 21, 2023, Mr. Strine received a Notice of Allegations and Imposition of Temporary Measures (the "E.D. Notice") from the Center via email. *Id.*, ¶ 12. Through the E.D. Notice, Mr. Strine learned for the first time that E.D. filed a complaint with the Center, claiming that she did not consent to their intimate relations in November 2019. *Id.*, ¶ 13. The Center alleged that Mr. Strine was a "participant," as defined in the Center's Code of Conduct, because Mr. Strine was a member of the United States Equestrian Federation ("USEF") and the United States Eventing Association ("USEA"). *Id.*, ¶ 14. USEF and USEA are NGBs that permit the Center, pursuant to a Master Services Agreement, to govern the conduct of their respective members. *Id.* After the E.D. Notice was issued, Mr. Strine was unable to obtain credentials to attend the 2023 Pan American Games in Santiago, Chile. *Id.* at 9, ¶ 34.

Without notice, a hearing, or "assessment" regarding whether the Center has "subject matter jurisdiction over events allegedly occurring between two adults outside of sport," the Center "suspended Mr. Strine's business activities as they related to sport." *Id.* at 6, ¶ 15. The E.D. Notice imposed the following "Temporary Measures":

> *Temporary Suspension*
> Beginning on September 21, 2023 Respondent is prohibited from participating, in any capacity, in any event, program, activity, or competition authorized by, or under the auspices of [] the United States Olympic & Paralympic Committee (USOPC), the National Governing Bodies recognized by the USOPC, a Local Affiliated Organization as defined by the Code, or at a facility under the jurisdiction of same.
>
> *No Contact Directive*
> During the pendency of the Center's investigation, Respondent is prohibited from communicating in any with E.D. Communication includes, but is not limited, to contact by phone, through email or text message, via any social media application or other electronic medium, in-person interactions (verbal and non-verbal), or contact facilitated through a third party. Should Respondent and E.D. happen to be in the same place at the same time, in addition to refraining from any form of contact, Respondent must make reasonable efforts to keep their distance and avoid getting too close to Claimant(s). Please contact the Center if you have any questions about this Directive.

*Id.*, ¶ 16.

V.D., another woman who had a "consensual intimate encounter" with Mr. Strine, filed a complaint with the Center that "made essentially the same factual claim" against Mr. Strine as E.D. had. *Id.*, ¶ 17. At no time did Mr. Strine and V.D. have a "business or personal relationship arising out of sport" and V.D. was not "ever an employee, subordinate, contractor, or student to or of Mr. Strine at his facility or with regard to sport or the Olympic Movement." *Id.*, ¶ 18. Mr. Strine received a second notice from the Center that imposed the same Temporary Measures (the "V.D. Notice") as those described in the E.D. Notice. *Id.*, at ¶ 19.

3

In January 2024, the Center sent Mr. Strine a third notice that claimed Mr. Strine had attended a horse show (the "January 2024 Notice"), which violated the Temporary Measures imposed in the E.D. Notice and V.D. Notice. *Id.* at 7, ¶ 22. The Center continued to impose the Temporary Measures against Mr. Strine pursuant to the January 2024 Notice. *Id.* Mr. Strine responded to the January 2024 Notice, stating he went to a "public restaurant, which happened to have a view of a horse show grounds." *Id.*, ¶ 23. Mr. Strine responded that he had not participated "in any way, in any horse show." *Id.* Based on Mr. Strine's dining at the restaurant, the Center continued the Temporary Measures. *Id.*, ¶ 24. Mr. Strine did not receive a hearing before the continuation of the Temporary Measures. *Id.*

The Center sent Mr. Strine another notice that amended the E.D. Notice and V.D. Notice. *Id.*, ¶ 25. The Center claimed that Mr. Strine "utilized an intoxicating substance[]" during the course of conduct alleged by E.D. and V.D. *Id.* As a result, the Center continued the Temporary Measures. *Id.* Mr. Strine was not given a hearing before the Temporary Measures were continued. *Id.* The notices did not contain "any supporting documentation" or "copies of the underlying complaints" that were submitted to the Center. *Id.* at 8, ¶ 26. The notices "merely provided the scantest [] summary of the alleged events," prejudicing Mr. Strine's "ability to cogently respond" to the notices. *Id.*

Mr. Strine was placed on a list of people subject to restrictions imposed by the Center ("the List"). *Id.*, ¶ 28. The List is publicly available online and maintained by the Center. *Id.* Mr. Strine did not have a hearing before he was placed on the List. *Id.* On June 5, 2024, the State of Florida banned any person who is on the List from being at a

4

state park during a horse show. *Id.* at 9-10, ¶ 35. Due to the List, USEA withdrew approval for Mr. Strine to host three eventing competition dates and will not allow a third party lessee to hold eventing competitions at Mr. Strine's facility, Barnstable South. *Id.* at 10, ¶ 37. Due to the "USEA ban," the value of Barnstable South has depressed by at least $1.5 million. *Id.* The "negative innuendo" from Mr. Strine being on the List has resulted in at least three of his "horse transactions" being canceled or failing to close. *Id.*, ¶ 38.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible." *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)). Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted). A court, however, does not need to accept conclusory allegations. *See, e.g., Hackford v. Babbit*, 14 F.3d 1457, 1465 (10th Cir. 1994) ("we are not bound by conclusory allegations, unwarranted inferences, or legal conclusions").

5

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (alterations omitted).

### B. Federal Rule of Civil Procedure 12(b)(1)

Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) is appropriate if the Court lacks subject matter jurisdiction over claims for relief asserted in the complaint. Rule 12(b)(1) challenges are generally presented in one of two forms: "[t]he moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003)). Ultimately, plaintiff has "[t]he burden of establishing subject matter jurisdiction" because

he is "the party asserting jurisdiction."  *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008).

### III.  ANALYSIS

The only "Counts" that Mr. Strine asserts against the Center are Count I, "Declaratory Judgment," and Count II, "Preliminary and Permanent Injunction."  Docket No. 1 at 33-43.  However, these are forms of relief that do not create independent causes of action.  *See Brickert v. Deutsche Bank Nat'l Tr. Co.*, 380 F. Supp. 3d 1127, 1141 (D. Colo. 2019) ("Plaintiff alleges a 'claim' for declaratory and injunctive relief, but such claim is actually a request for a certain type of relief and not a separate cause of action.").  The complaint largely recites legal argumentation rather than alleges facts that support a cause of action.  Therefore, it is not obvious what claims Mr. Strine brings against the Center.  It appears, however, that Mr. Strine asserts claims against the Center for (1) violation of his First Amendment rights, *see* Docket No. 1 at 26, ¶ 105; (2) violation of the Ted Stevens Olympic and Amateurs Sports Act (the "Amateur Sports Act"), 36 U.S.C. § 220541(a)(1)(H), for failure to provide a hearing and other procedural safeguards before imposing the Temporary Measures, *see id.*, ¶¶104-05; and (3) violation of the nondelegation doctrine.  *See id.* at 31, ¶¶ 120-123.

#### A.  **Subject Matter Jurisdiction**

The Court first addresses whether the Center's "preemption" arguments implicate the Court's subject matter jurisdiction, and thus Rule 12(b)(1), or whether such arguments constitute a dispute on the merits, implicating Rule 12(b)(6).  *See* Docket No. 31 at 8-10.  The Center argues that, because Mr. Strine challenges the eligibility determination of the Center, his claims are "preempted" and "this Court does not have

7

jurisdiction to hear such claims." *Id.* at 8.  The Center purports to make a facial attack on the complaint pursuant to Rule 12(b)(1).  *See id*. at 7-8.

A "preemption analysis" asks whether a federal law "preempts state law."  *See Turner v. Dunkin,* 2024 WL 1282463, at *5 n.6 (D. Kan. Mar. 26, 2024).  And it is true that certain preemption arguments constitute challenges to the Court's subject matter jurisdiction.  *See, e.g., id*. ("Complete preemption is a jurisdictional doctrine that allows a defendant to remove a state claim to federal court 'when a federal statute wholly displaces the state-law cause of action[.]'") (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003)).  Mr. Strine, however, does not bring any state law claims to which the preemption doctrine would be applicable.  *See* Docket No. 1; Docket No. 36 at 15-17 (distinguishing cases cited by the Center on the basis that, in such cases, plaintiff "brought state law claims"); see also PREEMPTION, Black's Law Dictionary (12th ed. 2024) ("The principle (derived from the Supremacy Clause) that a federal law can supersede or supplant any inconsistent state law or regulation.").  Therefore, the Center's argument – that the Amateur Sports Act prevents Mr. Strine from bringing federal claims that challenge his eligibility to participate in the Olympic Movement, *see* Docket No. 31 at 8-10, does not implicate preemption or the Court's subject matter jurisdiction.  Rather, the Center argues that the Amateur Sports Act precludes Mr. Strine's federal claims.  *See id*.  When a defendant argues that a federal claim is precluded by another federal law, the Court "needn't worry about subject matter jurisdiction" where the plaintiff "properly invoked the court's federal question jurisdiction" by bringing that federal claim.  *See Turner*, 2024 WL 1282463, at *5 n.6.  Here, Mr. Strine properly invokes the Court's subject matter jurisdiction by bringing a First

8

Amendment claim, specifically alleging that imposition of the Temporary Measures and inclusion on the List has curtailed his "freedom of speech, freedom of association, and liberty," including the ability to "freely travel and attend public facilities" without "any prior notice and a hearing." Docket No. 1 at 11, ¶ 42. He also brings a claim arguing that the Amateur Sports Act violates the nondelegation principle. *See id*. at 31.

Therefore, the Court will consider the Center's motion as a Rule 12(b)(6) motion that argues that Mr. Strine fails to state a claim for relief.

### B. First Amendment Claim

The Court turns to the Center's argument that Mr. Strine's constitutional claims should be dismissed because the Center is not a state actor. *See* Docket No. 31 at 12-13. The Center points to 36 U.S.C. § 220541, which states that nothing in the Amateur Sports Act shall be construed "to render the Center a state actor." 36 U.S.C. § 220541(a)(2)(D). Mr. Strine responds that the Center cannot "disclaim" that it is a state actor because his allegations are of "a Constitutional nature." Docket No. 36 at 6. He contends, contrary to § 220541(a)(2)(D), that the Center is a state actor as evidenced by its structure and purpose. *Id.* at 6-11. Furthermore, he argues that, even if the Center is a private party, it can be deemed a state actor. *Id.* at 11-12.

Mr. Strine relies on *United States v. Ackerman*, 831 F.3d 1292, 1297 (10th Cir. 2016), for the proposition that specific features of the Center render it a state actor. *See id.,* at 7. First, Mr. Strine argues that the Center receives almost all of its funds from USOPC and that the Center was created by USOPC. *Id.* at 8. Second, he claims that the Center performs the role of a state actor because each NGB grants the Center the authority to investigate, enforce, and adjudicate alleged violations of the Center's Code

9

of Conduct and the ability to amend the Code which "automatically" becomes part of the Amateur Sports Act "without public comment." *Id.* at 9. Third, he says the Center exists for the public purpose of safeguarding athletes. *Id.* Fourth, he argues that § 220542 affords the Center "state actor-type duties" because it states that the Center shall "develop training, oversight practices, policies, and procedures for implementation by a national governing body to prevent the abuse, including emotional, physical, and sexual abuse, of any amateur athlete." *Id.* at 9-10 (quoting 36 U.S.C. § 220542(a)(1)). Fifth, he says the Center is required to do the following, which are "due process requirements":

> (D) maintain an office for response and resolution that shall establish mechanisms that allow for the reporting, investigation, and resolution, pursuant to subsection (c), of alleged sexual abuse in violation of the Center's policies and procedures;
>
> (E) ensure that the mechanisms under subparagraph (D) provide fair notice and an opportunity to be heard and protect the privacy and safety of complainants;
>
> . . .
>
> (H) ensure that any action taken by the Center against an individual under the jurisdiction of the Center, including an investigation, the imposition of sanctions, and any other disciplinary action, is carried out in a manner that provides procedural due process to the individual, including, at a minimum—
>
>> (i) the provision of written notice of the allegations against the individual;
>>
>> (ii) a right to be represented by counsel or other advisor;
>>
>> (iii) an opportunity to be heard during the investigation;
>>
>> (iv) in a case in which a violation is found, a reasoned written decision by the Center; and
>>
>> (v) the ability to challenge, in a hearing or through arbitration, interim measures or sanctions imposed by the Center.

Docket No. 36 at 10 (citing 36 U.S.C. § 220541(a)(1)(D), (a)(1)(E), (a)(1)(H)).

In *San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.,* 483 U.S. 522, 547 (1987), the Court held that USOPC, then known as the United States Olympic Committee, was not a state actor.  Therefore, the fact that USOPC, itself not a state actor, created and funds the Center does not weigh in favor of finding that the Center is a state actor.  *See Navarro v. United States Ctr. for SafeSport*, 2025 WL 209166, at *14 (W.D. Va. Jan. 15, 2025) (finding that the principles from *San Francisco Arts & Athletics, Inc.*, establishing that USOPC is not a state actor, support the conclusion that the Center is also not a state actor).  Rather, the Center is a private, nonprofit corporation, independent of USOPC, that was incorporated in Colorado and serves as "the independent national safe sport organization and [is] recognized worldwide as the independent national safe sport organization for the United States."  36 U.S.C. § 220541(a)(1)(A).  The Center's functions "relate to 'the conduct [and] coordination of amateur sports,' which [] 'always have been performed by private entities'" and the Center's "investigation and adjudication functions fall under that umbrella, as they determine a person's eligibility to participate in amateur sports."  *See Navarro*, 2025 WL 209166, at *14 (quoting *San Francisco Arts & Athletics, Inc.,* 483 U.S. at 544-45 ("[n]either the conduct nor the coordination of amateur sports has been a traditional governmental function)).  Furthermore, the fact that Congress imposed "procedural due process" requirements on the Center, pursuant § 220541(a)(1)(D), (a)(1)(E), (a)(1)(H), does not render the Center a state actor.  "Even extensive regulation by the government does not transform the actions of the regulated entity into those of the government." *San Francisco Arts & Athletics, Inc.*, 483 U.S. at 544.  The provisions that Mr. Strine cites as "impress[ing] due process requirements upon the Center," Docket No. 36 at 10,

11

are "best understood as establishing some requirements that [the Center] must follow when exercising that private authority" and "did not transform [the Center's] private conduct into federal action." *Navarro*, 2025 WL 209166, at *14.

Because the Court finds that the Center cannot be considered a state actor and that Mr. Strine cannot bring constitutional claims against the Center, the Court will dismiss Mr. Strine's First Amendment claim pursuant to Rule 12(b)(6). *See Navarro*, 2025 WL 209166, at *15 ( "there is no basis for treating [the Center] as an arm of the federal government"); *Wright*, 549 F. Supp. 3d at 1307 (finding that, because defendant was not a state actor, plaintiffs' First Amendment and Fifth Amendment claims were "subject to dismissal for failure to state a claim"). To the extent that Mr. Strine brings other constitutional claims, not readily apparent in his complaint, the Court will dismiss those claims on the same basis.

### C. Violation of the Amateur Sports Act for Failure to Provide Procedural Safeguards

Mr. Strine appears to bring a claim alleging that the Center violated 28 U.S.C. § 220541(a)(1)(H), *see* Docket No. 1 at 26, ¶ 104, which requires the Center "to comply with certain statutorily-enumerated procedures when taking action against any individual under its jurisdiction." *See Doe v. United States Ctr. for SafeSport, Inc.*, 2024 WL 3924663, at *10 (W.D. Wash. Aug. 23, 2024).

Mr. Strine's claim fails because the "Amateur Sports Act as a whole expressly does not authorize private rights of action." *See id*. (citing 36 U.S.C. § 220505(b)(9) ("neither this paragraph nor any other provision of this chapter shall create a private right of action under this chapter")). Additionally, 28 U.S.C. § 220541, which enumerates the procedures that the Center allegedly violated, states that "[n]othing in

12

this subsection shall be construed . . . to give rise to a claim under State law or to create a private right of action." 36 U.S.C. § 220541(a)(2)(C). Mr. Strine responds that 36 U.S.C. § 220541(a)(2)(C) does not "disclaim a right of action under **_federal constitutional law_**, and specifically preserves 'the right of an individual within the Center's jurisdiction to pursue civil remedies through the courts for personal injuries arising from abuse in violation of the Center's policies and procedures.'" *See* Docket No. 36 at 12 (quoting 36 U.S.C. § 220541(c)(2)).

Because the Court finds that Mr. Strine cannot bring federal constitutional claims against the Center, as it is not a state actor, Mr. Strine's purported exception to 36 U.S.C. § 220541(a)(2)(C) does not apply. Even if Mr. Strine could bring federal constitutional claims, his reliance on 36 U.S.C. § 220541(c)(2) is unavailing. Section 220541(c)(2) states in relevant part:

> Nothing in this section shall be construed as altering, superseding, or otherwise affecting the right of an individual within the Center's jurisdiction to pursue civil remedies through the courts for personal injuries arising from abuse in violation of the Center's policies and procedures.

36 U.S.C. § 220541(c)(2). This provision does not grant Mr. Strine a private right of action, but rather "makes clear *victims of abuse* do not waive their right to bring legal action against their abusers by participating in the Center's processes." *Doe*, 2024 WL 3924663, at *9 n.8 (citation omitted). Furthermore, Mr. Strine's citation to *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 185 (2023), for the proposition that the "Supreme Court has found that even the existence of a statutory review provision does not automatically extend to every claim concerning an agency action" is unavailing because the Center is not a state actor and therefore there is no agency action at issue that is purportedly shielded from judicial review. *See* Docket No. 36 at 12.

13

Therefore, to the extent that Mr. Strine brings claims alleging that the Center violated the Amateur Sports Act, the Court will dismiss those claims. *See Doe,* 2024 WL 3924663, at *10 (dismissing claim that the Center failed to comply with procedures enumerated in 28 U.S.C. § 220541(a)(1)(H) because the Amateur Sports Act does not authorize a private right of action).

### D. Non-Delegation Claim

The Court next turns to the Center's argument that Mr. Strine's cause of action that the Amateur Sports Act unconstitutionally delegates federal powers to the Center should be dismissed for failure to state a claim. Docket No. 31 at 16-21. Mr. Strine alleges that "Congress gave federal regulatory and enforcement authority over sport to the Center, thus effectively creating a private organization with powers usually reserved to the federal government under the Vesting Clauses." Docket No. 1 at 17, ¶ 67.

"The Constitution provides that '[a]ll legislative Powers herein granted shall be vested in a Congress of the United States' . . . and [the Supreme Court] ha[s] long insisted that 'the integrity and maintenance of the system of government ordained by the Constitution' mandate that Congress generally cannot delegate its legislative power to another Branch." *Mistretta v. United States*, 488 U.S. 361, 371–72 (1989) (quoting U.S. Const. art. I, § 1; *Field v. Clark*, 143 U.S. 649, 692 (1892)). However, "Congress may 'obtain[] the assistance of its coordinate Branches' – and in particular, may confer substantial discretion on executive agencies to implement and enforce the laws." *Gundy v. United States*, 139 S. Ct. 2116, 2123 (2019) (quoting *Mistretta*, 488 U.S. at 372). "[I]n our increasingly complex society, replete with ever changing and more technical problems," the Supreme Court has understood that "Congress simply cannot

14

do its job absent an ability to delegate power under broad general directives." *Id.* (quoting *Mistretta*, 488 U.S. at 372). Thus, the Supreme Court has "held, time and again, that a statutory delegation is constitutional as long as Congress 'lay[s] down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform.'" *Id.* (quoting *Mistretta*, 488 U.S. at 372; *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928)).

Mr. Strine's non-delegation claim focuses on 36 U.S.C. § 220541(b) which states, "[t]he policies and procedures developed under subsection (a)(1)(C) shall apply as though they were incorporated in and made a part of section 220524 of this title." 36 U.S.C § 220541(b). Section 220541(a)(1)(C) states that the Center shall "maintain an office for education and outreach that shall develop training, oversight practices, policies, and procedures to prevent the abuse, including emotional, physical, and sexual abuse, of amateur athletes participating in amateur athletic activities through national governing bodies." 36 U.S.C. § 220541(a)(1)(C). Section 220524 dictates the general duties of NGBs. *See* 36 U.S.C. § 220524. Mr. Strine argues that this statutory scheme "makes The Center's pronouncements of its Code into law." Docket No. 36 at 20.

As discussed previously, the Supreme Court held that the conduct and coordination of amateur sports by the USOPC is not a government function. *See San Francisco Arts & Athletics, Inc.,* 483 U.S. at 545. The coordination of amateur sports encompasses the Center's investigative and adjudicative functions that are performed with the purpose of determining a person's eligibility to participate in amateur sports. *See id.*; *Navarro*, 2025 WL 209166, at *14.

15

Furthermore, § 220541(b) does not delegate to the Center the authority to exercise federal rulemaking power. The Court disagrees with Mr. Strine's argument that the Center has the same rulemaking power that was deemed to violate the private non-delegation principle in *Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, 53 F.4th 869, 882 (5th Cir. 2022). In *Black*, the Horseracing Integrity and Safety Act ("HISA") delegated the ability to create anti-doping, medication, and racetrack safety programs – without review of the Federal Trade Commission[2] – to a private entity. 53 F.4th at 882. Thus, the court held that the private entity had sweeping "rulemaking power." *Id*.

Here, the Center has no such rulemaking power. Section 220541(b) merely dictates that that NGBs have an obligation to adhere to the Center's Code of Conduct. The Court agrees with the Center that § 220541(b) does not make the Center's Code of Conduct "federal law, but simply requires NGBs to have policies and procedures that are consistent" with the Code of Conduct. Docket No. 31 at 20; *see Navarro*, 2025 WL 209166, at *16 (holding that § 220541(b) "does not give legislative effect to the [the Center's] Code" and therefore does not "delegate any legislative or other governmental authority to [the Center]").

---

[2] In *Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, 107 F.4th 415, 424 (5th Cir. 2024), the court held that Congress's later amendment to HISA, that gave the Federal Trade Commission the authority to modify rules proposed by the private entity, cured the non-delegation issue.

Accordingly, the Court finds that Mr. Strine has not plausibly alleged that the Amateur Sports Act unconstitutionally delegates federal powers to the Center and will dismiss Mr. Strine's non-delegation claim pursuant to Rule 12(b)(6).[3]

## IV.   CONCLUSION

Therefore, it is

**ORDERED** that Defendant United States Center for SafeSport's Amended Motion to Dismiss or, in the Alternative, to Compel Arbitration [Docket No. 31] is **GRANTED**.  It is further

**ORDERED** that plaintiff's First Amendment claim is **DISMISSED with prejudice**. It is further

**ORDERED** that, to the extent that plaintiff brings other constitutional claims, those claims are **DISMISSED with prejudice**.[4]   It is further

---

[3] Because the Court finds that Mr. Strine fails to state a claim upon which relief can be granted, due to the Center not being a state actor, the Amateur Sports Act not providing for a private right of action, and the Amateur Sports Act not violating the private non-delegation principle, the Court will not consider the Center's argument that Mr. Strine failed to exhaust his administrative remedies and that his claims must be arbitrated.  See Docket No. 31 at 10-12.

[4] The Court will dismiss Mr. Strine's constitutional claims with prejudice because the complaint fails to state a claim under Rule 12(b)(6) and amendment would be futile given that the Center is not a state actor.  See Brereton v. Bountiful City Corp., 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile."); see also Navarro, 2025 WL 209166, at *17 (dismissing claim alleging that the Center violated plaintiffs' Fifth Amendment due process rights with prejudice where the court found that the Center was not a state actor); Wright, 549 F. Supp. 3d at 1309 (dismissing plaintiff's complaint with prejudice where the "only claims that plaintiff alleges are constitutional claims, but neither [defendant] is a government actor" and "Plaintiff cannot cure this lack of an essential element of his constitutional claims" such that "[a]llowing plaintiff an opportunity to amend would be futile here").

**ORDERED** that plaintiff's claim alleging a violation of the Amateur Sports Act, 36 U.S.C. § 220541(a)(1)(H), for failure to provide a hearing and other procedural safeguards is **DISMISSED with prejudice**. It is further

**ORDERED** that, to the extent that plaintiff brings other claims alleging violations of the Amateur Sports Act, those claims are **DISMISSED with prejudice**. [5] It is further

**ORDERED** that plaintiff's nondelegation claim is **DISMISSED with prejudice**. [6] It is further

**ORDERED** that this case is closed.

DATED September 25, 2025.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

---

[5] The Court will dismiss Mr. Strine's Amateur Sports Act claims with prejudice because the complaint fails to state a claim under Rule 12(b)(6), and amendment would be futile given that the Amateur Sports Act does not provide for a private right of action. *See Brereton*, 434 F.3d at 1219; *see also Campbell v. Eaton Corp.*, No. 17-cv-02661-RM-SKC, 2019 WL 5458816, at *6 (D. Colo. Sept. 30, 2019), *report and recommendation adopted*, 2019 WL 5457711 (D. Colo. Oct. 24, 2019) (the "OSHA retaliation claim should be dismissed WITH PREJUDICE because there is no private right of action under that statute."); *Escano v. RCI LLC*, 2022 WL 17251273, at *1 (D.N.M. Nov. 28, 2022), *report and recommendation adopted*, 2023 WL 34525 (D.N.M. Jan. 4, 2023) (recommending "dismissing with prejudice Counts Five and Six, which are founded on a provision of the Telephone Consumer Protection Act (TCPA) that provides no private right of action").

[6] The Court will dismiss Mr. Strine's nondelegation claim with prejudice because the complaint fails to state a claim under Rule 12(b)(6), and amendment would be futile given that the Amateur Sports Act does not violate the non-delegation principle. *See Brereton*, 434 F.3d at 1219; *see also Navarro*, 2025 WL 209166, at *17 (dismissing claim alleging that the Amateur Sports Act unconstitutionally delegates federal authority to the Center rights with prejudice).